IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BOAZ PLEASANT-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 11-2138-JDT-cgc |
| | ) | |
| MARK H. LUTTRELL, JR., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ORDER DENYING PLAINTIFF'S MOTION TO AMEND WITHOUT PREJUDICE
ORDER DENYING PLAINTIFF'S MOTION FOR PSYCHOLOGICAL
EXAMINATION AS MOOT
ORDER CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

The *pro se* prisoner Plaintiff, Boaz Pleasant-Bey, filed a complaint pursuant to 42 U.S.C. § 1983 on February 15, 2011, concerning his confinement at the Shelby County Criminal Justice Complex ("Jail").[1] (Docket Entry 1.) On September 20, 2011, the Court entered an order dismissing portions of the complaint and directing the Clerk to issue process for Shelby County and individual Defendants Rodgers, Hawkins, Coleman, Moore, Bowers, and McGhee.[2] (D.E. 9.) The Defendants filed a motion to dismiss or for summary judgment

---

[1] Plaintiff is currently in the custody of the Tennessee Department of Correction and is incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee.

[2] According to documents subsequently filed by the Defendants, the correct spelling of this Defendant's last name is McGhee rather than McGee. The Clerk is DIRECTED to modify the docket to reflect the correct spelling.

on January 30, 2012. (D.E. 24.) On February 9, 2012, Plaintiff filed a motion to amend the complaint. (D.E. 26.) On March 2, 2012, he filed a combination motion for judgment as a matter of law/response to the Defendants' motion to dismiss.[3] (D.E. 28.) Defendants filed a response/reply on April 16, 2012 (D.E. 32), and Plaintiff filed a reply on April 25, 2012 (D.E. 33).

Plaintiff alleges that he is a practicing Muslim and that his faith requires him to attend Jumah services every Friday, fast during the month of Ramadan, and refrain from the consumption of pork. (D.E. 1 at 2.) In the complaint, he alleged that the Defendants implemented various unconstitutional policies that adversely affect Muslim inmates at the Jail. The claims remaining after the order of partial dismissal include Plaintiff's allegations that: (1) Muslim inmates housed on the 4th Floor of the Jail cannot have Jumah services every Friday because Defendant Hawkins failed to hire an imam, and the volunteer imam was often unavailable to conduct the services; (2) inmates are not allowed to lead religious services; (3) Muslim services are regulated and attended by Gang Intelligence Unit ("GIU") officers, but Christian services are not; (4) only nine inmates at a time are permitted to attend Jumah services, and the length of the services are severely limited, but there are no similar restrictions for Christian services; (5) his dietary needs were not accommodated during Ramadan; (6) Muslim inmates were not provided with a feast at the end of Ramadan even though Christian inmates are permitted yearly "revivals" for which food is supplied; and (7)

---

[3] A motion for judgment as a matter of law is not appropriate at this stage of the case. Therefore, the Court construes Plaintiff's filing as a cross-motion for summary judgment.

Plaintiff attempted suicide by cutting his wrist because there was no imam to whom he could speak about his problems.

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[4] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

---

[4] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

>   (3)   grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
>   (4)   issue any other appropriate order.

Fed. R. Civ. P. 56(e).

>   In Celotex Corp., the Supreme Court explained that Rule 56:
>
>   mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

>   The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably

4

>     asks whether reasonable jurors could find by a preponderance of the evidence
>     that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).  However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter.  Liberty Lobby, 477 U.S. at 249.  Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

The Defendants seek judgment as a matter of law on several grounds.  They have submitted two affidavits of Defendant Robert L. Moore, the Chief Jailer for the Shelby County Sheriff's Office ("SCSO")  and accompanying exhibits.  (D.E. 24-1, 32-3, & 32-4.) Defendants have also submitted the affidavits of Defendants Roy Rodgers (D.E. 24-2), J. Hawkins (D.E. 24-3), James E. Coleman (D.E. 24-4), Rod Bowers (D.E. 24-5), and Charline McGhee (D.E. 24-6), as well as the affidavits of L. Davis, a Jail Chaplain (D.E. 32-1), and D. Muhammad, a Religious Leader at the Jail (D.E. 32-2).

In opposition to the Defendants' motion and in support of his cross-motion, Plaintiff has submitted four of his own affidavits (D.E. 28-6 at 2-4; D.E. 33 at 6), various exhibits (D.E. 28-13, 28-14, 28-15, & 28-16), and the affidavits of inmates Tavrys Walls (D.E. 28-2), Terry Braden (D.E. 28-3), Jerry Robinson (28-4), and Curtis Harper (D.E. 28-5).

The Defendants first assert that many of Plaintiff's claims are time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007); see also Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a). Roberson v. Tenn., 399 F.3d 792, 794 (6th Cir. 2005); Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000); Berndt v. Tenn., 796 F.2d 879, 883 (6th Cir. 1986).

Plaintiff's complaint was filed on February 15, 2011. Therefore, any claims arising prior to February 15, 2010, are barred by the statute of limitations.

Defendants also contend that Plaintiff's claims are barred by the failure to exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Porter v. Nussle, 534 U.S. 516, 532 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.").

Section 1997e(a) requires not merely exhaustion of the available administrative remedies, but *proper exhaustion* of those remedies, meaning that a prisoner must comply

6

with the institution's "critical procedural rules," such as time limits for filing grievances. Woodford v. Ngo, 548 U.S. 81 (2006).

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

Id. at 95. See also Jones, 549 U.S. at 218.

"An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process." Reed-Bey v. Pramstaller, 603 F.3d 322, 324 (6th Cir. 2010). Thus, an inmate who does not timely pursue all available levels of the grievance procedure has not properly exhausted a particular claim.

The evidence in the record shows that Plaintiff filed only two grievances, #295356 dated November 11, 2010 (D.E. 1 at 8), and #296144 dated December 3, 2010 (id. at 9), that concern incidents arguably falling within the one-year limitations period. In both of those grievances, Plaintiff complains generally about various matters and their discriminatory effects. For example, he complains about the lack of proper and regular Jumah services, the fact that the GIU is present at the services, the limited number of inmates allowed at the services, the lack of an imam, the policy against inmates leading religious services, the lack of a Ramadan feast, the lack of Halal food, and the failure to order Muslim literature. (Id.

7

at 8-9.)  Defendant Hawkins is specifically mentioned only in connection with the failure to order Muslim literature.  (Id. at 8.)[5]

Defendants argue that Plaintiff failed to exhaust both grievances because he did not comply with the Jail's essential procedural rules for inmate grievances.  SCSO Policy No. 840.08(D) provides that grievances must be filed within thirty days of the "aggrieved occurrence."  (D.E. 32-4 at 2.)  However, the "date of occurrence" for Grievance #295356 is listed as "from 2007-Oct. 2010 present."  (D.E. 1 at 8.)  Similarly, the "date of occurrence" for Grievance #296144 is "from Feb. of 2007-12/03/10 present."  (Id. at 9.)  Nothing in either grievance indicates that it was filed within thirty days of any particular incident.

Both of these grievances were also rejected because they were "over the limit."  SCSO Policy No. 840.06 provides that "[i]nmates are allowed to file five (5) grievances within a thirty (30) day period."  The same Policy also provides that "[i]nmates that submit more than five (5) grievances within a thirty (30) day time frame is [sic] considered 'over the limit'. The Grievance System will only accept two (2) other grievances for the next six months from the same inmate."  (D.E. 32-4 at 2.)

There has been some confusion between the parties over the policy that inmates may file only five grievances within a thirty-day period. In Defendants' memorandum in support of their motion for summary judgment (D.E. 24 at 6-7) and in Defendant Moore's initial affidavit (D.E. 24-1 at 5), the policy is described as prohibiting more than five grievances per

---

[5] These documents, and #296144 in particular, are difficult to read because Plaintiff's handwriting is so small and because he wrote all around the edges of the forms.

month. Plaintiff emphatically insists that he did not file more than five grievances in November 2010 or in December 2010. However, in their response to Plaintiff's cross-motion (D.E. 32 at 1, 6, 12) and in Defendant Moore's second affidavit (D.E. 32-3 at 2), the policy is correctly stated as prohibiting the filing of more than five grievances in a <u>thirty-day period</u>, which is not the same as five per month. For example, under the policy as written, an inmate who files one grievance on November 15th, four grievances on November 25th, and then files another grievance on December 10th, is "over the limit." That is because he will have filed six grievances within the thirty-day period ending December 10th.

Plaintiff has submitted no evidence that no filed fewer than five grievances in the thirty-day period ending November 11, 2010, or in the thirty-day period ending December 3, 2010. Therefore, because Plaintiff did not comply with the SCSO's grievance policies by filing his grievances within thirty days after any specifically identified occurrence, and because his grievances were "over the limit," Plaintiff has failed to properly exhaust his administrative remedies with regard to all of the Defendants. The Defendants are entitled to judgment as a matter of law on that basis alone.[6]

For the foregoing reasons, the Defendants' motion for summary judgment (D.E. 24) is GRANTED and Plaintiff's cross-motion for summary judgment (D.E. 28) is DENIED.

On February 9, 2012, Plaintiff filed a motion to amend and supplement his complaint to include an additional Defendant, Chaplain L. Davis, and to add further claims regarding

---

[6] The Court declines to address the parties' additional arguments.

9

the "continuing" violation of his First Amendment rights and a claim under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.* (D.E. 26.) As summary judgment is being granted on the claims against the other Defendants, the motion to amend is DENIED without prejudice to Plaintiff refiling that claim as a separate civil action.

Plaintiff's motion for a pre-trial psychological examination (D.E. 36) is DENIED as moot.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. Id. The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $455 appellate filing fee if Plaintiff nevertheless appeals the grant of summary judgment. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). See McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997). McGore sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed

that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                         s/ **James D. Todd**
                                         JAMES D. TODD
                                         UNITED STATES DISTRICT JUDGE